OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Plaintiff in Error,

v.

William Thomas MILAM d/b/a Famous Brands Wholesale Liquor Company, Defendant in Error.

No. 40292.

Supreme Court of Oklahoma.

March 10, 1964.

As Amended July 13, 1964.

Rehearing Denied July 14, 1964.

Charles R. Nesbitt, Atty. Gen. of Oklahoma, J. H. Johnston, Asst. Atty. Gen., for plaintiff in error.

Johnston & Johnston, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal by the Oklahoma Alcoholic Beverage Control Board from a judgment of the District Court of Oklahoma County reversing orders of said Board suspending the wholesale liquor license of William Thomas Milam d/b/a Famous Brands Wholesale Liquor Company.

The record reflects that on November 7, 1961, the Board made 18 separate orders finding that Milam, by and through his employees (two salesmen), had committed 18 separate acts in violation of specified provisions of the Oklahoma Alcoholic Beverage Control Act, 37 O.S.1961 § 501 et seq., and of specified rules and regulations of the Board. These orders suspended Milam's license 10 days for each violation, to run consecutively, or a total of 180 days suspension. Milam appealed to the District Court and on trial de novo, at which Milam introduced no evidence, the court found Milam not guilty of the charges and reversed and set aside the orders of suspension. The Board then perfected this appeal.

It appears from the record and brief of plaintiff in error that similar effective orders had been entered against the two salesmen, as agents, for the same acts, and they having appealed, the three cases, by agreement of all parties, were consolidated for trial de novo in the District Court. The Board's orders of suspension as to the two salesmen were upheld and affirmed by the court. The two salesmen had been licensed by the Board as provided and required under the Act. The licenses of the two salesmen were apparently suspended by authority of Title 37 O.S.1961 § 536, which section will be hereinafter more specifically referred to.

In urging error on the part of the lower court the Board contends that under the provisions of the Beverage Control Act, supra, and the Board's rules and regulations applicable to the circumstances, the Board had authority to suspend Milam's wholesaler license because of the acts of his salesmen in offering and making rebates or discounts on sales, and in making sales on credit. The Board further contends that lack of knowledge of such acts on the part of Milam is immaterial. In view of our disposition of this matter we will join in the Board's assumption that the evidence shows the salesmen performed the above acts. From our examination of the record we can only conclude that the evidence does not show Milam had any personal knowledge of such transactions.

It thus appears from the evidence that Milam's two involved salesmen were selling on a commission basis, that in their retail stores several retail liquor store operators were offered a rebate on their purchases to the extent of a part of the commission, and that some time after the purchases were made the salesmen would return and pay the rebate in cash. There were eleven rebates in amounts ranging from $3.97 to $26.10. Four of the charges involved the initial offers by the salesmen to make the rebates.

The remaining three charges involved sales on credit made or attempted to be made by the salesmen. The evidence as to such credit incidents makes it appear that they were either personal with the salesmen or a mix-up in filling orders.

Under the circumstances a suspension of Milam's license must be based entirely upon the acts of his salesmen of which he had no knowledge and which, so far as the record shows, he neither authorized nor condoned.

Title 37 O.S.1961 § 536, provides in part as follows:

"(a) (1) It shall be unlawful for any person privileged to sell alcoholic beverages to wholesalers or retailers to discriminate, directly or indirectly, in price between one wholesaler and another wholesaler or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality; or

"(2) to grant, directly or indirectly, any discount, rebate, free goods, allowance or other inducement.

"(b) The Board is hereby authorized to promulgate rules which are necessary:

"(1) To carry out the purpose of this Section and to prevent its circumvention by offering or giving of any rebate, allowance, free goods, discount or any other thing or service of value; * *."

Title 37 O.S.1961 § 535, states that it is unlawful for a wholesaler or his employee or agent to extend credit to a retailer.

Title 37 O.S.1961 § 514(2) also authorizes the Board "To promulgate rules and regulations, in the manner herein provided, to carry out the purposes of this Act."

Pursuant to the above authorizations the Board promulgated Rules and Regulations providing:

Article I, Section 5:

"Licensees are at all times responsible for the conduct of their business and are at all times directly responsible for any act or conduct of any employee which is in violation of the Act or the Rules and Regulations of the Board whether the licensee be present at any such time or not. This section is defined to mean that any unlawful, unauthorized, or prohibited act on the part of an agent or employee shall be construed as the act of the employer, and the employer shall be proceeded against as though he were present and had an active part in such unlawful, unauthorized, or prohibited act, and as having been at the employer's direction and with his knowledge."

Article III, Sec. 11:

"No manufacturer of alcoholic beverage, holding a manufacturer's license under the Act and no manufacturer of alcoholic beverage outside of this state manufacturing alcoholic beverage for sale and distribution within the state, and no licensed wholesaler within this state, their agents, salesmen or representatives shall, directly or indirectly, offer, give or furnish any gifts, prizes, coupons, premiums, rebates, service of any employee, decorations, or any other inducement or thing of value of any kind to a retailer."

The Board contends the above portions of the Act and Rules are sufficient justification for a suspension of Milam's license. The weight of the Board's argument must be considered in the light of the effect of that part of 37 O.S.1961 § 528, which provides any license shall:

" * * * (a) be revoked, or suspended for such period as the Board deems appropriate, if the Board finds that the licensee has wilfully violated any of the provisions of this Act, * * *".

If Milam had personally committed the acts prohibited by Sec. 536, supra, then he could have been charged with the violations and the question of the suspension of his license determined by the Board without considering whether such violations were willful. See our recent decision in Okla-

homa Alcoholic Beverage Control Board v. Naifeh, 1964, 388 P.2d 855, in which we held that under the provisions of Sec. 536, and a Board rule against donating alcoholic beverages, where a wholesale licensee personally donated free goods, the Board may suspend the wholesale license, without determining the willfulness of the violation. But to say that Milam's wholesale license may be suspended solely by reason of the commission of the present acts by his salesmen off the wholesale premises, without a showing of knowledge or authority, express or implied, on his part, would deprive the provision of Sec. 528, supra, of any force and effect.

The word "willfully" is of similar import or the equivalent of "knowingly." Hutchman v. State, 61 Okl.Cr. 117, 66 P.2d 99, 101, and Bohannon v. State, Okl.Cr., 271 P.2d 739. It is our interpretation of the Act itself that the insertion of the word "willfully" in said Sec. 528, in connection with suspension of the license, requires that the licensee at least have some knowledge of the commission of the prohibited acts. Otherwise a licensee, without knowledge of a violation of the Act by a licensee's salesman, could be deprived of a valuable right.

We now turn to a discussion of Art. I, Sec. 5, and Art. III, Sec. 11, of the Rules and Regulations, quoted above. These sections, inter alia, make licensees responsible for the conduct of their business, and make the prohibited act of the employee that of the employer, and as having been done at the direction and with the knowledge of the employer (licensee), and prohibit offers and gifts of rebates.

In Oliver v. Oklahoma Alcoholic Beverage Control Board, Okl., 359 P.2d 183, we held that the Beverage Control Act, supra, did not vest in the Board the power or jurisdiction to fix or control retail liquor prices, for the reason, inter alia, that the Legislature had not declared the policy of the law was to fix prices. Therein we stated that the Legislature is presumed to have expressed its intent in the statute, intended what it expressed and nothing more.

Section 3 (37 O.S.1961 § 503) of the Act states that the Act shall be deemed an exercise of the police power of the State.

In the Oliver case we quoted from National Bank of Tulsa Building v. Goldsmith, 204 Okl. 45, 226 P.2d 916, as follows:

" '* * * The police power is an attribute of sovereignty or in effect is sovereignty, and the State and its police power cannot be separated. It is fundamental that the Legislature of a state may not part with any of its right to exercise the police power.

" ' "As firmly established as the general rule is the corollary that the discretion of the Legislature cannot be parted with any more than the power itself. Thus, the legislative authority cannot redelegate to anyone the ultimate right to determine when, to what extent, and under what circumstances the police power may properly be exercised in any given case." 11 Am.Jur. Constitutional Law, § 254.' "

Likewise, in the instant case, the Legislature, as an exercise of police power, has provided for suspension of the license where the licensee is guilty of a violation. A violation because of the personal act of the wholesale licensee would be one knowingly committed by the wholesale licensee. However, in the instant action the issue presented is whether or not a holder of a wholesale license is responsible for the acts of his agents off the licensed premises, of which he had no knowledge and which he neither authorized nor condoned.

The Board cites Chambers v. Herrick, 172 Kan. 510, 241 P.2d 748, and Perry v. Oregon Liquor Control Commission, 180 Or. 495, 177 P.2d 406. The decisions are not applicable. The cases do not reflect that the Acts there under consideration contained a provision requiring a willful violation as is set forth in the Oklahoma Act.

The Act in 37 O.S.1961 § 532, does state that any license issued thereunder shall be a purely personal privilege, but there is no doubt that it is considered a valuable privi-

lege, subject to being lawfully revoked or suspended only in accordance with the provisions of the Act. Furthermore, 37 O.S. 1961 § 531, provides that appeals from orders of the Board shall be heard by the courts as an equity proceeding. Under the Board's contention the license of a licensee could be suspended or revoked because of irresponsible acts of salesmen of which the licensee had no notice or knowledge and which he neither authorized nor condoned. It appears that it was the intent and purpose of the Legislature to extend to the licensee some protection in that situation.

We can only conclude and hold that the Control Board has no authority to promulgate rules and regulations which make a wholesaler's license subject to suspension solely because of the acts of his salesmen, of which he had no knowledge and which he neither authorized nor condoned, without a showing and finding of willful violation on the part of the licensee.

Affirmed.