Louis George LOWERY, Appellee,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Appellant.

No. 50783.

Supreme Court of Oklahoma.

Sept. 19, 1978.

Michael L. Fought, Bartlesville, Otto Pluess, III, Oklahoma City, for appellee.

Larry Derryberry, Atty. Gen. of Okl., Kenneth Delashaw, Asst. Atty. Gen., Oklahoma City, for appellant.

BERRY, Justice:

Louis George Lowery, appellee, applied to Oklahoma Alcoholic Beverage Control Board, appellant, for license to operate a retail alcoholic liquor store within city limits of Bartlesville, Oklahoma. The Board denied the license, for reasons to be set out. Lowery appealed Board's decision to District Court in Washington County. The court found Board's decision to be arbitrary and unreasonable, and ordered Board to issue the license. It is from that decision this appeal is taken. Louis George Lowery will be referred to as appellee; Board as appellant.

Appellee sought a license to operate a retail alcoholic liquor store in a shopping center near the corner of Washington and Frank Phillips Boulevards in Bartlesville. Appellant denied the license, relying on 8 Opinions Oklahoma Attorney General 388 (8 Okl.Op.A.G. 388), Attorney General's opinion 750337, which construes 37 O.S.1971 § 534(c), the statute then in force. The statutory language construed in the opinion is: ". . . a license shall not be issued for a location on any city or town block where a school or church is located." 37 O.S.1971 § 534(c).

The liquor store was to be located on Frank Phillips Boulevard. A church is located some 1,350 feet west of the proposed liquor store. The church property is located on the same side of Frank Phillips Boulevard as the liquor store location.

The attorney general's opinion defines "block" as an area bounded by four streets. Applying this opinion literally, appellant found the block in this case to be bounded by Frank Phillips Boulevard on the north,

Washington Boulevard on the east, Adams Boulevard on the south, and Comanche Avenue on the west. The block runs one and one-half miles on the north and one-half mile on the east. Because Comanche Avenue curves in its course from north to south, the south and west boundaries of the block are somewhat smaller. Nonetheless, the block encloses an area of some 400 acres. Caney River runs through the western one-third of the block, and much of the interior of the block is part of Caney flood plain. Some of the block is under standing water several times a year. This may deter the completion of a through street at this point.

Along Frank Phillips Boulevard, running west from Washington Boulevard, there is one street that appears to intersect from the south. Just west of the liquor store location there is a 50 foot right of way running north and south for some distance. The south is a dead end.

The maps introduced into evidence before the Board, and included in the record before district court, show a developed street intersects Frank Phillips Boulevard from the north between the church and the liquor store location. The street does not continue south of Frank Phillips Boulevard.

Appellant denied appellee's license application. On appeal to district court appellant's decision was reversed. District court found appellant had acted in an arbitrary, capricious and unreasonable way and ordered appellant to issue the license. Appellant then commenced its appeal in this Court.

Appellant relies upon two propositions, but we will consider them together. Appellant primarily contends the definition of "block" applied to 37 O.S.Supp.1976 § 534(c) in 8 Okl.Op.A.G. 388, is correct. We disagree.

37 O.S.1971 § 534(c) provides for location of retail liquor stores. 37 O.S.Supp.1976 § 534(c) contains one amendment, which is immaterial to our deliberations. The statute provides *inter alia*, subject to the nondiscriminatory zoning ordinances of the city, no liquor store may be located within 300 feet of the premises of a church or public school. Further, no liquor store may be located on any city or town block where a school or church is located.

The attorney general's opinion, and appellant's position here, is that a block is that portion of a city bounded on four sides by city streets.

Several of the cases appellant relies on, and cases cited in attorney general's opinion, are assessment cases. Typically, the cases deal with assessment of cost of improvements to streets and charging the assessment against property benefitted by the improvements. We think assessment cases are not instructive where the question involves use of property rather than taxation of property pro rated to benefits bestowed.

Other courts have determined that a block is the portion of one side of any street included between two cross streets. *Storck v. Mayor, etc., of City of Baltimore*, 101 Md. 476, 61 A. 330. This definition has been applied where the subject of the legislation was restriction upon use of property. *Patterson v. Johnson*, 214 Ill. 481, 73 N.E. 761.

Appellant urges it would be difficult to ascertain the legislature clearly did not intend a city or town block to mean a square or portion of the city actually enclosed by streets or avenues. We find it instructive to note the use of the distance of 300 feet as the separation distance between liquor stores and churches or schools.

The close combination of the term block and the distance 300 feet occurs in the rule of evidence, where a witness uses the term "block" as descriptive of distance the commonly accepted meaning of the term is "300 feet." *Bland v. Fox*, 172 Neb. 662, 111 N.W.2d 537, and cases cited therein; *Lilly v. Boswell*, 362 Mo. 444, 242 S.W.2d 73.

The other provisions of 37 O.S.1971 § 534(c), regarding proximity to churches and schools, speak in terms of linear distance. It seems to us the legislature intended the word "block" as a measure of linear distance rather than as descriptive of a square block as contended by appellant.

Appellant cites other cases dealing with the definition of "block", but for the most part "block" as used in the cases is further limited by the terms "square" or "frontage." *Harrison v. People ex rel. Boetter*, 195 Ill. 466, 63 N.E. 191, is such a case.

In the *Harrison* case an application for a dram-shop, or saloon, license was presented to the proper officer accompanied by the signatures of certain local property owners and occupants. The ordinance under construction provided, ". . . which application shall be signed by a majority of the property owners according to the frontage on both sides of the street in the block upon which such dram-shop is to be kept, and shall also be signed by a majority of the bona fide householders and persons or firms living or doing business on each side of the street in the block upon which such dram-shop shall have its main entrance." Ibid.

The dram-shop had its main entrance on 51st Street, between Grand and Calumet, in the City of Chicago. The decision indicates a majority of owners and occupants of the 51st Street block had signed the application. It was conceded this was sufficient to satisfy the second of the above requirements. Fulfillment of the first requirement depended on signatures of owners of property on all four sides of the block, on both sides of each street.

The court distinguished the two above requirements based largely on inclusion of the word "frontage" in the first requirement. The court also emphasized the location of a saloon affected the entire square, for purposes of "character and value" of the property but noted, for purposes of use, the 51st Street block only was affected.

■ We hold the word "block" without modification, under 37 O.S.Supp.1976 § 534(c), means "that portion of a street between two intersecting streets." See *Patterson v. Johnson*, supra; *People ex rel. Beinert v. Miller*, 100 Misc. 318, 165 N.Y.S. 602 (Sup.Ct.).

Appellant further contends presence of a short dead end street does not destroy the integrity of a block, and urges such street be disregarded in determining whether two portions of the same street are within the same block. Appellant's argument assumes appellant's definition of "block" as a premise.

■ Applying the definition of "block" we have adopted, we hold a street is divided into blocks by its intersections with other streets regardless of whether the intersecting streets completely cross the divided street. See *Wise v. City of Chicago et al.*, 183 Ill.App. 215.

It is immaterial whether the intersecting streets enter the block from the side on which the church or the liquor store, or either of them, is located. In the case before us, the intersecting street enters Frank Phillips Boulevard from the north but both the church and the liquor store are located on the south side of the Boulevard.

In reaching this conclusion we are further aided by referring to 37 O.S.Supp.1976 § 534(c), which provides in part:

". . . For purposes of determining measured distance, property situated on the opposite side of the street from such church or school shall be considered as if it were located on the same side of the street with such church or school."

■ We think the legislature intended to treat each linear block as a unit. The block is defined by reference to an intersecting street. Whether the intersecting street crosses the block, or enters the intersected street from either direction is immaterial.

■ We note appellant has placed some emphasis on the definition of block as found in 11 O.S.1971 § 124. There, block is defined as ". . . the area bounded on all sides by streets or avenues, irrespective of the platted designation thereof." Appellant claims provisions of 25 O.S.1971 § 2, require us to apply the definition to "block" as used in 37 O.S.1971 § 534(c). We reject the contention. 25 O.S.1971 § 2, requiring use of uniform definitions for the same words wherever the words appear in the statutes, does not apply where a contrary definition clearly applies. We think this is such a case, and that the legislature intend-

ed to define "block" as we have explained herein.

■ Appellant relies on 8 Okl.Op.A.G. 388, defining "block" as set out above. It is the duty of public officers to follow the advice of the attorney general on construction of doubtful statutes. *Rasure v. Sparks*, 75 Okl. 181, 183 P. 495. However, this duty extends only until the public officer is relieved thereof by a court of competent jurisdiction or until this Court holds otherwise than the attorney general's opinion. 3 Okl. Op.A.G. 113 at 116 [Attorney General's opinion 70–161].

We will accord great respect to the opinion of the attorney general regarding construction of a statute, but the final construction rests with the courts. *State ex rel. Clifton v. Reeser*, Okl., 543 P.2d 1379 at 1384.

■ Appellant argues that since the statute regarding liquor licenses was amended after the attorney general's opinion was promulgated, but the construed part of the statute was not changed, the legislature intended to agree with the attorney general's opinion. We will not presume the legislature intended such a result. See *Tannehill v. Special Indemnity Fund*, Okl., 538 P.2d 590 at 592.

We will not adopt the attorney general's view of the construction of 37 O.S.1971 § 534(c), now 37 O.S.Supp.1976 § 534(c). We conclude to the contrary as heretofore set out. We hold the presence of a street intersecting Frank Phillips Boulevard between the location of the church and the proposed liquor store location divides the block containing the liquor store from the block containing the church.

Affirmed.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, BARNES, SIMMS and DOOLIN, JJ., concur.

IRWIN, J., concurs specially.

IRWIN, Justice, concurring specially:

In *AMF Tuboscope Company v. Hatchel*, Okl., 547 P.2d 374 (1976) we said that the Legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction, bearing in mind the evils intended to be avoided or the remedy afforded.

The Legislature, in providing that a retail package store shall not be located within 300 feet of a church or school, established the minimum distance without reference to the actual size of a block. It did not provide a standard definition for a "block". Therefore, in my opinion, the word "block" must be given a reasonable interpretation depending upon the facts and circumstances of a particular case.

In my judgment, when the legislature provided that a "license shall not be issued for a location on any city or town block where a school or church is located", that it did not intend and did not include within the word "block" a tract of land comprising approximately 400 acres.